[Civ. No. 25195.   Second Dist., Div. One.   Sept. 22, 1961.]

HARRIS INTERTYPE CORPORATION (a Corporation), Respondent, v. WILLIAM ROBERTSON et al., Appellants.

Clarence S. Hunt, David H. Battin and C. Duane Mooney for Appellants.

Johnson & Johnson and George R. Johnson for Respondent.

WOOD, P. J.—The first cause of action was in claim and delivery for possession of printing machinery (two typesetting machines and other equipment) which plaintiff's predecessor or assignor (Intertype Corporation) had sold to Elayne H. Moxley under a conditional sales contract.

The second cause of action was for the purpose of quieting plaintiff's title to said machinery.

A cross-complaint was filed by defendant Baird, executor of the will of Earl H. Briggs, for money which Briggs had paid

to plaintiff's predecessor under a later conditional sales contract—whereby the machinery was sold to Briggs.

Judgment was that plaintiff is the owner and entitled to possession of the machinery; that defendant Robertson shall pay $683.33 to plaintiff; and that said executor Baird is not entitled to recover anything by reason of his cross-complaint.

The defendants Robertson and Baird, as executor, appeal from the judgment.

Appellants contend that certain findings are not supported by the evidence; and that some of the conclusions of law are erroneous.

The findings of the court were in substance, as follows: Intertype Corporation, plaintiff's assignor, by a conditional sales contract executed by Elayne H. Moxley on May 20, 1956, and executed by Intertype on June 8, 1956, agreed to sell to Moxley certain typesetting machines described as follows: . . . (detailed description). The agreed price was $25,204.15 payable in installments. The machines were to be located in Long Beach (address stated). By the terms of the contract, Moxley was forbidden to remove the property from its location or to assign her rights thereunder or to encumber the property without the permission of Intertype. In the event of her failure to perform any of her obligations under the contract, the full amount of the unpaid purchase price would become payable, and Intertype was authorized to take possession of the property without legal process and without notice, and was given the option to rescind the sale, in which case, all payments made were deemed to have been for the use of the property. About July 20, 1956, Moxley or her agent, Don Brown, reported to Intertype's district manager, E. H. Hostetler, by telephone that the machines were being removed to defendant Robertson's print shop in Seal Beach, so that he could print a newspaper which was published by Moxley. Hostetler consented orally. There was no mention of a sale, assignment, or transfer of the machines to Robertson. About July 23, 1956, Robertson told Intertype's salesman, W. R. Asdel, that he had negotiated an agreement with Moxley to purchase her equity in the machines, but she had changed her mind and refused to sign the agreement. Robertson asked Asdel where Moxley made her payments, and he replied that payments were made at the Bank of Belmont Shore. About July 25, 1956, Robertson paid $400 to that bank as collection agent for Intertype. Intertype had sent to the bank a $400 note made by Moxley, which note was one of a series of notes evidencing

the installments of the purchase price of the machines. The note was paid by Robertson unconditionally without any claim or notice that he claimed to be an assignee of Moxley. Therefore, on several occasions, Robertson asserted to Asdel and Hostetler that he had purchased Moxley's equity in the machines and demanded that Intertype consent to an assignment of the contract from Moxley to him. They told Robertson repeatedly that Intertype could not consent to an assignment by Moxley to Robertson or anyone until it had written evidence of such assignment, after which it would be necessary that the assignment be submitted to Intertype executives in Brooklyn for a decision whether or not to consent to such assignment. Moxley informed Hostetler that Robertson had possession of the machines and he was withholding possession against her wishes. She denied that she had made any assignment of her contract to Robertson or that she had sold her equity in the machines to him. The $400 payment due in August 1956 was paid, reportedly, by William Brunton, a stranger to the contract. Robertson tendered payment of $400 to the bank as the September installment, but the tender was rejected by the bank on the instructions of Moxley and without notice to or knowledge of Intertype. Robertson repeatedly demanded of Asdel and Hostetler that Intertype consent to an assignment of the Moxley contract to him, but he at no time offered to pay the balance due on the Moxley contract. Intertype at no time indicated to Robertson that it would reject a tender by him of the entire balance due on the contract. Earl H. Briggs informed Hostetler that he was negotiating to purchase Moxley's equity in the machines, and asked whether Intertype would institute legal proceedings to take possession of the machines from Robertson for the benefit of Briggs if he would underwrite the cost of such proceedings. Hostetler told him that if Briggs were to secure a written assignment from Moxley he, Hostetler, would seek the consent thereto from Intertype's home office. He also told Briggs that Intertype would not participate in any legal proceedings for the benefit of anyone but Intertype, and he also said that Moxley's equity was worth $2,500. No payments were made by Moxley after the payment in August 1956. Upon her request, Hostetler agreed to defer repossession of the machines for a reasonable time to enable her to attempt to find a buyer for her equity. Hostetler received a letter from Moxley, dated November 16, 1956, reciting that she had sold the machines to Briggs, who had agreed to assume the unpaid balance on

her contract, and had agreed to assume all expense in taking possession of the machines and moving them from Robertson's premises. About December 4, 1956, Moxley and Briggs filed an action in Orange County for possession of the machines. About December 8, in response to the claim of the plaintiffs, the sheriff seized the machines from Robertson, and they were removed to Briggs' place of business in Long Beach. About December 17, Briggs executed a new conditional sales contract for the purchase of the machines from Intertype for $25,-187.76. This contract, which followed the form of the Moxley contract, was executed by Intertype on January 14, 1957, and it recited that the machines were in Long Beach. Briggs made the payments regularly until his death on April 16, 1958,— he had made payments totalling $9,595.59, and he owed a balance of $15,900. About April 4, 1958, in the Orange County case judgment was rendered that Moxley and Briggs pay to Robertson a specified sum of money and deliver possession of the machines to him. The judgment was based on findings that Robertson was the owner of the property as against Moxley and Briggs, that they had not entered into a contract of the sale of the property, and that on July 20, 1956, Robertson had purchased the machines from Moxley. Briggs' executor appealed from the judgment which did not become final until May 1959. (The findings do not so state, but the judgment of the trial court in that case was affirmed on appeal— *Moxley* v. *Robertson*, 169 Cal.App.2d 72 [336 P.2d 992].) About April 22, 1958, Robertson offered to pay plaintiff, the successor and assignee of Intertype, the balance due on the Briggs contract for the machines if plaintiff could convey good title. About May 2, 1958, plaintiff notified him that it declined to sell the machines to him and demanded possession of them. About May 7, Robertson tendered to plaintiff a sight draft in the sum of $15,900 as payment in full of the balance due on the machines. This sum was in fact the balance due on the Briggs contract. Plaintiff returned the draft to Robertson, and demanded possession of the machines, which demand was refused by Robertson. Intertype and plaintiff at all times acted fairly and in good faith in their dealing with Robertson and Briggs. Neither Intertype nor plaintiff did at any time agree or conspire with Moxley or Briggs to deprive Robertson of any rights in the machines or to their possession. Neither Intertype nor plaintiff had knowledge that Moxley had sold her equity in the machines until the judgment became final in May 1959, in the Orange County case.

Under the heading of conclusions of law, the court made statements as follows: In the absence of the consent of Intertype to the assignment of July 20, 1956, by Moxley to Robertson, of her interest in the machines, Robertson acquired no interest in the machines as against Intertype. There was neither a valid tender by Robertson to Intertype of the balance due on the Moxley contract which would discharge the title of Intertype to said property, nor any statement or other action of Intertype which would justify Robertson in concluding that a tender by him of the balance due on said contract would be rejected by Intertype. Plaintiff was entitled to retake possession of the property by reason of Moxley's breaches of the conditional sales contract in attempting to assign the same to Robertson, without the consent of Intertype, and by her failure to make any payment on the contract after August 1956. The sales contract between Intertype and Moxley was cancelled by an implied mutual agreement when, upon Moxley's request, Intertype executed the conditional sales contract for the sale of the machines to Briggs on January 14, 1957. The sales contract with Briggs contained no express warranties of title or of quiet enjoyment, and the execution of the sales contract by Briggs, with knowledge of the circumstances, namely, refusal of Intertype to institute legal proceedings to retake possession from Robertson, and the institution of proceedings by Moxley and Briggs precluded any implied warranties of title or quiet enjoyment. When Intertype entered into the contract with Briggs, Intertype had a good and marketable title to the machines. The failure of Briggs' executor to make any payments on the Briggs contract after Briggs' death was not excused by any action of plaintiff, and plaintiff was entitled by said default to recover possession of the machines. Plaintiff is the owner of said machines and entitled to possession of them. Plaintiff is entitled to recover damages against Robertson for the unlawful detention of said property, computed at the rate of $500 per month from May 2, 1958, to June 12, 1958. Neither of the defendants had any interest whatsoever in said property, and the defendants should be barred from asserting any claims to said property adverse to plaintiff. Defendant Baird, as executor, is entitled to take nothing by reason of his cross-complaint.

A conclusion of law which appellant Robertson asserts is erroneous is as follows: "In the absence of the consent of Intertype to the assignment of July 20, 1956 by

Moxley to Robertson, of her interest in the above described machines, Robertson acquired no interest in said machines as against Intertype.'' Said appellant argues that when the only obligation is the payment of money, that obligation is not deemed so personal that it may not be delegated to another in the face of an express prohibition against assignment without the written consent of the contractual obligee, who in the present case, is Intertype. A buyer not in default may assign his interest under a conditional sales contract without the consent of the seller, even though such consent is specified in the contract, and thereby the assignee may acquire the right to make a timely tender of the balance of the purchase price and by reason of such tender become entitled to a transfer of the title to property. (See *Davies-Overland Co.* v. *Blenkiron*, 71 Cal.App. 690 [236 P. 179]; *Walker* v. *Houston*, 215 Cal. 742, 747 [12 P.2d 952, 87 A.L.R. 937].) Even though Moxley did not have the consent of Intertype to assign the contract, Robertson acquired the right to tender to Intertype the balance of the purchase price under the Moxley contract and thereby become entitled to a transfer of the title to the machines. The machines were moved from Moxley's place to Robertson's place about July 20, 1956. About five days thereafter, Robertson paid $400, under the Moxley contract, to the bank for the account of Intertype, but he did not notify the bank that he claimed to be assignee of Moxley. Apparently the August installment of $400, under that contract, was paid to the bank by one Brunton. Robertson tendered payment of $400 to the bank as the September installment under the Moxley contract, but the tender was rejected. It appears that Robertson did not during those months, or at all, tender payment of the balance of the purchase price under the Moxley contract. During those months, Robertson told representatives of Intertype on several occasions that he had purchased Moxley's equity in the machines, but he did not exhibit any documentary evidence thereof. Moxley told Intertype that she had not assigned her contract to Robertson, and that she had not sold her equity in the machines to him. It was not until May 7, 1958, which was approximately two years after the machines had been moved to Robertson's place of business, that he made the alleged tender of the balance of the purchase price. At that time he tendered $15,900, which was the balance of the purchase price under the Briggs contract, which contract had been made in December 1956 (about one and a half years previously), and

during which time Briggs had paid more than $9,000 thereon. If Robertson had made a tender of the balance of the purchase price, under the Moxley contract, promptly after July 25, 1956, when he claims Moxley assigned to him, it would have been necessary, of course, that he tender several thousands more than he tendered under the later Briggs contract. It is to be noted also that the tender of the balance under the Briggs contract was not made until after the judgment in the Orange County case had been affirmed on appeal. The decision in that case was to the effect that Moxley had assigned to Robertson. It is to be noted, however, that as of the time of that decision (March 1959) no payment had been made under the Moxley contract since August 1956. It is also to be noted that in December 1956, when the payments under the Moxley contract had not been made for the past three months, and when it had not been judicially determined whether Moxley had assigned to Robertson, Intertype, with the consent of Moxley, made the conditional sales contract with Briggs. As of that time the Moxley contract was not in existence insofar as Intertype was concerned. Any right which Robertson had to tender the balance of the purchase price and obtain title was derived through the Moxley contract. When Robertson made a tender about one and a half years after the Briggs contract was made and the Moxley contract ceased to exist, he tendered an amount which was the balance under the Briggs contract; and it is therefore apparent that he did not make a timely tender (as required when an assignment is made without consent) or make a tender under the Moxley contract. The finding of the court to the effect that Robertson did not make a tender of the balance of the purchase on the Moxley contract is supported by the evidence.

■ Appellant Robertson asserts further that a tender was excused for the reason the conduct of Intertype showed that a tender would be unavailing. He argues that the bank's rejection of the September 1956, installment indicated that a tender of the balance of the purchase price would be rejected. He also argues that statements of Intertype's representatives to the effect that they would not tell Robertson the amount of the balance on the Moxley contract indicated that such a tender would be an idle act. The fact that the bank rejected the offer of the September installment does not indicate that it would have been unavailing to offer the balance of the purchase price under the Moxley contract. The

offer of that installment might indicate that Robertson was assuming he had been accepted as the buyer in the place of Moxley. Intertype was under no obligation to so accept him. The only obligation of Intertype to Robertson, assuming there had been an assignment, would have been to accept from him a timely tender of the balance under the Moxley contract. The fact that Intertype's representative declined to enter into negotiations with Robertson does not indicate that offer of the balance would be an idle act. Intertype's contract was with Moxley, and a provision therein was that it should not be assigned without the consent of the seller. Robertson claimed he had an assignment, but he did not offer any documentary evidence in support of his claim. The representative of the seller testified that if Robertson had made an offer to pay such balance, he (representative) probably would have accepted it with the understanding that it would be applied on the Moxley contract. The evidence supports the finding that Intertype at no time indicated to Robertson that it would reject a tender of the entire balance under the Moxley contract.

One of the contentions of appellant Baird, as executor of Briggs' will, is to the effect there was a breach of implied warranty of quiet possession on the part of Intertype. Under the heading of Conclusion of Law, the court stated that ''the execution of the contract by Briggs, with knowledge of the circumstances, namely, refusal of Intertype to institute or participate in legal proceedings to retake possession of the machines from Robertson, and institution of such proceedings by Moxley and himself, Briggs, precluded any implied warranties of title or quiet enjoyment.'' Appellant Baird asserts that such conclusion is not supported by the findings of fact. It is apparent that such statement of the court includes a finding of fact to the effect that Briggs executed the contract with knowledge of the circumstances regarding Intertype's refusal to participate in legal proceedings to retake possession of the machines, and such knowledge, of course, of Briggs' own acts in starting such litigation. Such a finding is supported by the evidence. The evidence shows that Moxley and Briggs commenced the Orange County case on December 4, 1956, which was before Briggs made the contract with Intertype (on December 17, 1956). There was evidence that Briggs agreed to assume the responsibility and expense of litigation in taking possession of the machines which were then in the possession of Robertson. The court did not err

in finding and concluding there was no warranty of title or quiet enjoyment.

Appellant Baird also asserts that the judgment quieting title against him constituted the enforcement of a forfeiture of the money Briggs had paid. The contract with Briggs provided that in the event of his default, Intertype was authorized to repossess the property and rescind the sale, in which case all payments made were deemed to have been for the use of the property. Since Briggs' death (in April 1958) no payment under his contract has been made. The evidence shows that Briggs entered into the transaction with knowledge of the circumstances regarding the pending litigation. He had possession of the machines after he entered into the contract. This contention is not sustainable.

In view of the above conclusions, it is not necessary to determine other contentions on appeal.

The judgment is affirmed.

Lillie, J., concurred.